Richard KOST, Appellant (Plaintiff),

v.

**FIRST NATIONAL BANK OF GREYBULL, a Wyoming banking corporation, Appellee (Defendant),**

and

**Veoma Stahle, an individual, (Defendant).**

No. 83–253.

Supreme Court of Wyoming.

July 30, 1984.

**820**

Nancy G. Hinckley of Hinckley & Hinckley, Basin, for appellant.

Barton R. Voigt, of Barton R. Voigt, P.C., Thermopolis, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROSE, Justice.

Appellant Richard Kost brought this action against the First National Bank of Greybull, claiming damages arising out of the bank's release of escrowed documents against instructions. The trial court determined that the Bank acted reasonably and in accordance with the escrow instructions in delivering the documents to appellant's seller under a conditional sales contract. We will affirm.

## FACTUAL BACKGROUND

The facts in this case are undisputed. Appellant, Richard Kost, entered into an agreement to purchase land from Veoma Stahle on March 31, 1980. The parties designated appellee, the First National Bank of Greybull (Bank), as the escrow agent to hold the conditional sales contract and other relevant documents.

The Bank provided its standard escrow instructions, which were signed by Kost, Stahle, and a representative of the Bank. Portions of the instructions pertinent to this appeal read:

"WE, THE UNDERSIGNED BELOW DESIGNATED AS THE PARTIES HERETO

"Richard S. Kost, Basin, Wyoming

"Veoma M. Stahle, Orem, Utah

"hereby deposit with The First National Bank, Greybull, Wyoming the following described property and documents to-wit:

"Which shall be held by the said bank in escrow under the instructions therein and those below stated, to-wit:

"1.  a copy of the Contract dated the 31 day of March, 1980.

"2.  a Warranty Deed dated the 31 day of March, 1980.

"3.  a Quitclaim Deed dated the 3 day of April, 1980.

"4.  a Title Commitment

\*       \*       \*       \*       \*       \*

"3.  The escrow bank, as part of the consideration for the acceptance of this escrow, shall not be liable for any acts or omissions done by or for it in good faith, nor for any claims, demands or losses,

nor for any damages made or suffered by or under any party to this escrow, excepting such as may arise through or be caused by its willful or gross negligence.

\*    \*    \*    \*    \*    \*

"6. In accepting any funds, securities or documents delivered hereunder, it is agreed and understood between the parties hereto that the escrow bank will not be called upon to construe any contract or instrument deposited herewith, and shall be required to act in respect to the deposit herein made only upon the joint consent in writing of said other parties hereto, and in the absence of such agreement or consent, it reserves the right to held [sic] any money in its possession, and all papers in connection with or concerning this escrow, until a mutual agreement has been reached between all of said other parties or until delivery is legally authorized and ordered by final judgment or decree of a court of competent jurisdiction."

From the outset Kost was late in making his monthly payments of $693.38. When the Bank released the escrowed documents on August 20, 1982, its payment records showed Kost to be six payments in arrears.

The conditional sales contract delineates the rights of the parties in the event of buyer's default:

"8. \* \* \* all documents shall be returned to SELLER if BUYER shall become in default under the terms of this Contract.

"9. DEFAULT: In the event that BUYER shall be or become in default with respect to any provisions of this Contract, including but not limited to, the payment of money, then SELLER may, at her option, give notice in writing to BUYER of the nature and extent of such default, and in the event BUYER shall be and remain in default for a period of thirty (30) days after the posting of such notice, postage prepaid, in the United States mail, then all rights of BUYER hereunder shall cease and terminate and SELLER may, at her option, declare this Contract void and of no further force and effect, and take immediate possession of the premises and shall be entitled to the return to her of said documents from said escrow."

On March 20, 1982, Stahle sent a letter to Kost which said:

"\* \* \* [A]s of yesterday you should have made 18 payments on your contract, and you have made only 14 \* \* \*.

"\* \* \* I am contacting my attorney to start proceedings to foreclose unless you are able to at least bring the payments for this year up to date by April 19th."

She followed this letter with a personal meeting with Kost on May 18, 1982, at which time she advised him of her intent to give him only until July to take care of the late payments.

Finally, on July 12, 1982, Stahle's attorney, Mark L. Reynolds, sent a letter to Kost via certified mail, invoking the default provisions of the conditional sales contract. The letter continued:

"Please be advised that if payments have not been brought current within 30 days, Mrs. Stahle will declare the contract null and void and of no further force and effect and will take immediate possession of the premises and shall take immediate possession of all documents from the escrow, which was set up pursuant to the said contract."

Twice—on July 26, 1982 and on August 4, 1982—Kost wrote to Reynolds inquiring as to "the exact nature and extent of the default." In his letter of August 4, Kost said:

"\* \* \* I do not consider your letter of 12 July \* \* \* proper notice of default as required by the Stahle/Kost Contract."

He went on:

"This notice did not provide me with the 'nature and extent' of the default, i.e., how many payments, which payments, interest due, etc."

When Kost did not receive any further information, he wrote to the Bank president on August 10, 1982, informing the Bank of "a difficulty" with the conditional

sales contract and advising that release of the escrowed documents would violate the contract.

Reynolds, on behalf of Stahle, went to the Bank on August 20, 1982, requesting that the escrowed documents be released to him. After reviewing the documents, the payment records and the letters, the vice-president of the Bank conferred with the president, who suggested that they consult an attorney. The attorney determined that Kost was in default and advised the Bank to surrender the documents. The Bank did so, and that is the basis of this suit.

## DISPOSITION IN THE TRIAL COURT

Appellant originally brought suit against the Bank and Stahle. Since he and Stahle resolved their differences out of court, the trial concerned only Kost's claim against the Bank.

Kost's complaint alleged that the Bank acted in a "grossly negligent and willful manner" in releasing the documents in the face of his letter of August 10, 1982. This standard of care corresponds with paragraph three of the escrow instructions which provides that the Bank

"* * * shall not be liable for any acts or omissions * * * excepting such as may arise through or be caused by its willful or gross negligence."

At trial, appellant's counsel argued that the Bank "construed" the documents in escrow, contrary to paragraph six of the escrow instructions, when it determined that Kost was in default. Counsel argued that the Bank further violated paragraph six by releasing the documents without the joint written consent of the parties. The contention was that, pursuant to paragraph six, the Bank should have held the papers until the parties worked out their differences or until a court order directed the release. The failure of the Bank to do so constituted gross and willful negligence, according to Kost.

The trial court found for the Bank and entered its findings as follows:

"1. Plaintiff sought recovery of damages herein which he alleged arose out of willful and gross negligence of the Defendant Bank.

"2. The parties agreed in the documents upon which the action was based to a standard which imposes liability on the Bank only for willful or gross negligence.

"3. There can be no question that the Plaintiff was in fact in default under his contract with Mrs. Stahle.

"4. It was not unreasonable for the Bank to conclude that Mrs. Stahle's notice of default to the Plaintiff was sufficient, and the Bank's conduct did not rise to the level of willful or gross negligence.

"5. The mere failure of Mrs. Stahle to include the exact amount then due in her notice of default did not render the Bank's determination that the notice was sufficient an act of willful or gross negligence.

"6. Provisions in the Bank's Escrow Agreement giving it the option to require written consent by both seller and buyer before delivering escrowed papers did not prevent the Bank from acting without such written consent.

"7. The Plaintiff should be responsible for Defendant Bank's costs incurred in defense of this action."

## ISSUES ON APPEAL

Appellant presents the following issues for our consideration:

"1. The District Court erred in holding that there was no question that Kost was in default under the contract.

"2. The District Court erred in holding that the Bank's conduct was not willful or gross negligence.

"3. Kost was entitled to all of the damages he suffered as a result of the wrongful redelivery of the documents."

We will affirm the holdings of the district court with respect to Kost's default and the reasonableness of the Bank's conduct and, therefore, will not address the issue of damages.

## I

Appellant takes the position that the Bank wrongfully released the escrowed documents because he was never effectively in default under his contract with Stahle. Kost contends that there could be no operative default until he received proper notice of the "nature and extent" of his default pursuant to paragraph nine of the conditional sales contract. Such proper notice, according to Kost, would specify the precise number and amount of payments in arrears. In support of his argument, he cites Black's Law Dictionary (4th ed. 1951), which defines "extent" as "amount."

We agree with appellant that failure to make payments, while constituting grounds for forfeiture of a conditional sales contract, does not operate to terminate the contract absent appropriate notice to the nonperforming party. *Angus Hunt Ranch, Inc. v. Bowen*, Wyo., 571 P.2d 974, 978 (1977); *Younglove v. Graham & Hill*, Wyo., 526 P.2d 689 (1974). We cannot agree, however, that the letters from Stahle and her attorney, invoking the default clause and requesting payments, failed to satisfy the notice requirements under the contract in this case.

Our appellate obligation in cases of this sort is to interpret and construe the contract as a matter of law in order to shed light on the intention and understanding of the parties. Intention is determined from the words of the contract, if the language is clear and unambiguous, and we must consider the writing as a whole, taking into account the relationships between the various parts. *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, Wyo., 612 P.2d 463, 465 (1980), and cases cited therein.

In the instant case, the default provision in the conditional sales contract contemplates the buyer's breach of any term of the contract, including the payment of money. The purpose of the notice requirement with respect to a default is precisely what one would think—to put the buyer on notice that the default clause is being in-voked. The "nature and extent" requirement implements that purpose by letting the buyer know *why* such action is being commenced and *how* he might remedy the problem within the time provided. See *Angus Hunt Ranch, Inc. v. REB, Inc.*, Wyo., 577 P.2d 645, 650 (1978).

Stahle's letter of March 20, 1982, informed Kost of the nature of his default: he was delinquent in his monthly payments. The letter further specified that he owed four installments, payment of which would cure the default. Since Kost knew the amount of each monthly installment to be $693.38, he cannot reasonably maintain that Stahle's letter failed to inform him of the extent of his default. Subsequent letters by Stahle's attorney reaffirmed the nature of the default and indicated that appellant could avoid forfeiture of the contract by bringing his payments current within 30 days.

These letters sufficiently notified appellant of the manner in which he had breached the contract and of the performance necessary to cure his default. Such notice fully satisfied the express contract provisions and served to trigger Stahle's remedies under the default clause. We hold that the district court did not err in finding Kost unquestionably in default.

## II

Appellant contends that the Bank's release of the escrowed papers in this case constituted gross negligence because (1) the Bank construed the conditional sales contract and determined default contrary to paragraph six of the contract, and (2) the Bank ignored its legal obligations as an escrow agent to Kost. Appellant cites the general principle that an escrow holder owes a duty of care to both parties, e.g. *Osborn v. Grego*, 226 Kan. 212, 596 P.2d 1233, 1237 (1979), and refers us to our definition of gross negligence in *Knudson v. Hilzer*, Wyo., 551 P.2d 680, 684 (1976):

"* * * Gross negligence is an indifference to present legal duty and utter forgetfulness of legal obligations * * *."

With respect to his first contention, appellant points out that the Bank was under a fiduciary obligation to strictly comply with the escrow instructions. *Osborn v. Grego,* supra, 596 P.2d at 1237. Appellant contends that the Bank breached this fiduciary duty when it construed the contract and ascertained his default.

■ Considering the escrow instructions as a whole and keeping in mind that the purpose of such instructions is to provide direction to the escrow agent, we conclude that the Bank was required to examine all of the escrowed documents to determine its duties. The instructions direct the Bank to hold the documents

"* * * under the instructions therein [the conditional sales contract and other escrowed papers] and those below stated [the escrow instructions]."

Thus, the Bank had to read the instructions in conjunction with the contract to determine its duties as escrow agent. *Hays v. Hug,* 243 Or. 175, 412 P.2d 373, 374 (1966); *Estate of Reinhold v. Mansfield,* 90 Ill. App.3d 224, 45 Ill.Dec. 564, 412 N.E.2d 1146, 1149 (1980). The language in paragraph six that the Bank "will not be called upon to construe any contract or instrument deposited [t]herewith" precludes the parties from seeking an interpretation of their contract from the Bank, but does not prohibit the Bank from examining all relevant documents in order to perform its escrow function.

■ Prior to release of the papers, the Bank consulted an attorney. After examining the escrowed papers and the payment records, the attorney concluded that Kost was in default under the contract, that Stahle had provided adequate notice, and that the Bank should release the papers. The Bank's conduct in employing impartial counsel to examine the escrowed documents and advise the Bank as to its obligations did not violate the escrow instructions and, therefore, did not constitute gross negligence.

A strict reading of paragraphs eight and nine of the conditional sales contract, supra, seems to support the conclusion reached by the Bank's attorney. Both paragraphs provide for the return of the escrowed documents to the seller in the event of a default by the buyer. Thus, the Bank acted reasonably in following the advice of counsel to release the papers.

■ Kost further contends that the Bank acted in a grossly negligent way in failing to notify him prior to releasing the documents to Stahle's attorney. Kost's position is that the Bank owed him such notice, given the Bank's receipt of his letter protesting the release of the papers and the Bank's knowledge that he resided nearby and planned to subdivide the purchased land.

The Bank's officers and attorney testified that they considered appellant's letter of resistance, but determined that it did not affect the rights of the parties under the conditional sales contract or the escrow agreement. Appellant cites no authority and we have found none requiring an escrow agent to notify a defaulting party of delivery of the escrowed documents, when that party has previously received ample notice of intent to take such action from the performing party. Neither the escrow instructions nor the conditional sales contract requires such notice, and we conclude that the Bank breached no duty in failing to notify Kost prior to delivery of the papers to Stahle. *McWaters v. Frederick W. Berens, Inc.,* 143 Ga.App. 392, 394, 238 S.E.2d 717 (1977).

As to appellant's argument that the Bank should not have released the documents without the written consent of the parties, the trial court found that paragraph six of the escrow instructions, supra, gave the Bank an option to release or to hold the papers. The paragraph six language supports that finding:

"* * * [T]he escrow bank * * * shall be *required* to act in respect to the deposit herein made only upon the joint consent in writing of said other parties hereto, and in the absence of such agreement or consent, *it reserves the right to held*

[sic] any money *in its possession,* and all papers in connection with or concerning this escrow * * *." (Emphasis added.)

Appellant also sets forth the argument that the contractual provision limiting the Bank's liability (escrow instructions, supra, paragraph three) should be strictly construed, because the Bank provided the instructions. This argument was not presented below, so we need not consider it. *Scherling v. Kilgore,* Wyo., 599 P.2d 1352 (1979); *Dennis v. Dennis,* Wyo., 675 P.2d 265 (1984). It is worth noting, however, that a contract limiting liability may be enforced as long as it does not contravene public policy. *Brittain v. Booth,* Wyo., 601 P.2d 532, 535 (1979).

We conclude that the Bank properly determined its duties as escrow agent in accordance with the escrow instructions and breached no duty to appellant in releasing the documents to Stahle's attorney.

The judgment of the district court is affirmed.