ARTHUR TEPFER *et al.*, Plaintiffs-Appellants, *v.* DEERFIELD SAVINGS
AND LOAN ASSOCIATION, Defendant-Appellee.

First District (4th Division)   No. 82—1764

Opinion filed August 11, 1983.—Rehearing denied October 20, 1983.

Robert Schey, of Schey, Goffen & Associates, Richard Hollander, of Hol-
lander & Hollander, and William J. Harte, of William J. Harte, Ltd., all of
Chicago, for appellants.

Bradley, McMurray, Black & Snyder, of Chicago (W. A. Black, of coun-
sel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Plaintiffs, Arthur H. and Judith M. Tepfer, individually and as representatives of a class, brought an action in the chancery division of the circuit court of Cook County seeking monetary and injunctive relief against defendant, Deerfield Savings and Loan Association. Plaintiffs contend that they were damaged when, at the time their mortgage loan was closed, defendant deducted interest charges for the period of time between the loan disbursement and the first regular monthly principal and interest payment. Plaintiffs claim that the interest deduction violated the terms of the mortgage note. Following a hearing, the trial court dismissed plaintiffs' complaint. Plaintiffs appeal, arguing that the note's provisions regarding monthly interest payments "wholly control[led] the method of calculation and amount of interest" and therefore precluded defendant from deducting post-closing interest. We affirm the trial court's dismissal of plaintiffs' complaint.

FACTS

In April 1976, plaintiffs applied to defendant for a mortgage loan of $52,000. The loan application was approved on April 26, 1976. The loan commitment document (1) indicated that monthly principal and interest payments would be $402.89 and that the first payment was due on July 1, 1976; (2) described estimated loan costs; and (3) provided the following: "Interest, from the date of closing to the first day of the month in which first payment is due, must be added to TOTAL ESTIMATED LOAN COSTS." Both plaintiffs signed the loan commitment form.

On May 2, 1976, plaintiffs signed a "disclosure statement of cost of loan pursuant to Federal Reserve Regulation 'Z'" sent to them by defendant. The disclosure statement set out the amount of the loan, the terms of repayment, and the finance charges and other costs. Among the specified finance charges to be prepaid was "interest on loan from date of closing [anticipated to be June 14, 1976] to first regular payment date ... $208.76."

On May 2, 1976, plaintiffs executed a note for payment of the loan that provided:

"FOR VALUE RECEIVED, the undersigned [plaintiffs] hereby promise to pay to [defendant] *** the principal sum of FIFTY TWO THOUSAND AND NO/100 DOLLARS ($52,000), together with interest on the unpaid balance from time to time at the rate of EIGHT AND ONE HALF per centum (8½%) per annum thereafter.

\* \* \*

Said principal and interest shall be paid in monthly installments of FOUR HUNDRED TWO AND 89/100 DOLLARS ($402.89) on the FIRST day of each month, commencing with July 1, 1976 until this note is fully paid.

Said monthly payments shall be first applied to interest and the balance to principal. Interest for each month shall be added to the unpaid balance on the first day of each month at the rate of one-twelfth (1/12th) of the annual interest rate and shall be calculated upon the unpaid balance due as of the last day of the preceding month."

The loan was disbursed on June 15, 1976, one day later than expected at the time the disclosure statement was prepared. Plaintiffs received a disclosure settlement statement at this time, which they both signed. Under the heading of "items required by lender to be paid in advance" was an entry for "interest from 6/15/76 to 7/1/76 @ $12.28/day ... 196.48." The amount of interest payable for the post-closing interval was reduced from $208.76 to $196.48 because of the one-day delay in closing.

Plaintiffs repaid the loan in May 1980. On August 7, 1980, they filed a complaint in chancery, individually and as representatives of a class, alleging that because the note did not provide for payment of interest for the post-closing interval, "the aforesaid charge should have been credited to the principal and not to interest." On June 15, 1982, following a hearing, the trial court, on defendant's motion, ordered that plaintiffs' complaint be stricken and the cause dismissed with prejudice. Plaintiffs appealed.

OPINION

The only issue in this appeal is whether the above-quoted provisions of the note precluded the payment of interest on the mortgage loan for the 16-day post-closing interval after disbursement of the funds but before the due date of the first regular monthly installment. Plaintiffs' position is that the note is the exclusive statement of the contract between plaintiffs and defendant, and because the note is silent regarding post-closing interest, it was legally impermissible for defendant to charge interest for the post-closing interval. Defendant maintains that plaintiffs are seeking a windfall in the form of an interest-free loan for this period that was not contemplated in the parties' mortgage contract. We agree with defendant and disagree with plaintiffs.

Defendant argues first that the note itself requires plaintiffs to

pay post-closing interest because it provides that the principal sum is to be repaid "together with interest on the unpaid balance from time to time *** thereafter." Defendant maintains that, read together with the provision of the Illinois Uniform Commercial Code that "[u]nless otherwise specified a provision for interest means interest *** from the date of the instrument" (Ill. Rev. Stat. 1979, ch. 26, par. 3–118(d)), this language indicates that interest began to accrue on May 2, 1976, the date of the note, although defendant waived interest until the date of disbursement. While we do not disagree that such an interpretation is reasonable, we find it unnecessary to determine whether defendant's or plaintiffs' interpretation of the language of the note alone should prevail because, in our view, the trial judge correctly held that "the transaction must be viewed in its entirety. All documents executed as part of one transaction are to be given effect."

■ The general rule is that in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and construed with reference to one another because they are, in the eyes of the law, one contract. (17 Am. Jur. 2d *Contracts* sec. 264 (1964); 17A C.J.S. *Contracts* sec. 298 (1963); *Main Bank v. Baker* (1981), 86 Ill. 2d 188, 427 N.E.2d 94; see, e.g., *Lynch v. Bank of America National Trust & Savings Association* (1934), 2 Cal. App. 2d 214, 223, 37 P.2d 716, 720 ("The rule that separate written documents between the same parties and relating to the same subject-matter *** are to be construed together as one transaction, has been determined by so many authorities there is no room for controversy regarding that principle").) This is true whether or not the instruments were executed simultaneously; if executed at different times as parts of the same transaction they will be construed together. 17A C.J.S. *Contracts* sec. 298 (1963).

■ "Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect." (17 Am. Jur. 2d *Contracts* sec. 264, at 670 (1964).) "[C]ontemporaneous means so proximate in time as to grow out of, elucidate and explain the quality and character of the transaction, or an occurrence within such time as would reasonably make it a part of the transaction." (*Elsberry Equipment Co. v. Short* (1965), 63 Ill. App. 2d 336, 346-47, 211 N.E.2d 463, 468.) In *Elsberry*, this court held that in an action on a note it was permissible for the trial court to admit into evidence agreements executed 41 days earlier than the

note in question as contemporaneous writings that were part of the same transaction.

This long-recognized principle of contract law is applied by statute to negotiable instruments:

> "As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction ***." (Ill. Rev. Stat. 1979, ch. 26, par. 3—119(1).)

"Accordingly, as between the same parties, a note may be affected by a separate *writing.*" (*Main Bank v. Baker* (1981), 86 Ill. 2d 188, 201, 427 N.E.2d 94, 99.) The writing, although physically separate from the instrument being construed, is logically viewed as an integral part of the total transaction, and thus is legally treated as a part of the contract between the parties.

■ Because "[a]s between the immediate parties a negotiable instrument is merely a contract" (Ill. Ann. Stat., ch. 26, par. 3—119, comment 3, at 85 (Smith-Hurd 1963)), and a mortgage is a negotiable instrument, these principles apply when a mortgage is to be construed. Thus, where separate documents are executed in a mortgage transaction, "a stipulation or condition inserted in the one is an effective part of the contract of the parties, although not found in the other, provided there is no necessary inconsistency." (10 C.J.S. *Bills and Notes* sec. 45 (1938).) Clearly, no "necessary inconsistency" is to be found among the instruments in the instant case: those that refer to post-closing interest agree that it was to be paid, and the note, being silent on the question, is not inconsistent with them.

In the case at bar the note at issue was both preceded and followed in the mortgage transaction by contemporaneous writings that elucidated the character of the transaction. The loan commitment document of April 26 provided that post-closing interest must be added to the loan cost. The disclosure statement of May 2 specified an interest charge of $208.76 for the period from June 14 to July 1. The note, also executed on May 2, set forth the manner in which the regular monthly payments would be calculated and paid beginning on July 1, but made no mention of the post-closing period. Finally, the June 15 closing statement specified that interest of $196.48 for June 15 to July 1 must be paid in advance. Applying the foregoing principles of mortgage, negotiable instrument, and contract law to these instruments in the context of the overall transaction, as we are required to do, we find it abundantly clear that the payment of interest on the loan during the post-closing interval was an element of the agreement

between the parties in this case.

We think it important to point out that this finding corresponds to the expressed intention of the parties at the time the bargain was struck between them. Not only did plaintiffs sign all the documents described above, they also stated in affidavits on May 26, 1982, that at the time they signed these documents they believed the figures were correct. Thus plaintiffs were aware that they would be charged post-closing interest, and closed the loan on that basis. "Where different instruments are executed at the same time, but are all parts of one transaction, it is the duty of the court to suppose such a priority in the execution of them as shall best effect the intention of the parties." (17 Am. Jur. 2d *Contracts* sec. 264, at 671 (1964).) Because "the instruments will be so interpreted as to permit each to perform its own function agreeably to the intent of the parties" (10 C.J.S. *Bills and Notes* sec. 45 (1938)), we hold that interest for the post-closing interval was provided in the contract at issue in this case and properly was deducted by defendant.

Plaintiffs rely on *Wishnoff v. Guardian Savings & Loan Association* (1975), 34 Ill. App. 3d 107, 339 N.E.2d 494, and *Lustgarten v. First Federal Savings & Loan Association* (1963), 42 Ill. App. 2d 86, 191 N.E.2d 434, which held that the language of the mortgage note was controlling in ruling that the lender could collect a full month's interest for the month in which the loan was prepaid (*Wishnoff*) and that the lender could charge interest for each month in advance (*Lustgarten*). We do not find that these decisions require a holding that defendant in this case could not begin to charge interest at the time plaintiffs' loan was disbursed. These two cases are factually distinguishable, as defendant points out, in that no language could be found in contemporaneous loan documents to modify the disputed terms in the notes and the notes accordingly were enforced as written. In the case at bar, as we have said, three contemporaneous instruments require payment of post-closing interest and must be given effect in interpreting the transaction as a whole.

For all of the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

ROMITI, P.J., and JOHNSON, J., concur.